IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

KEVIN F.,

      **Plaintiff,**

v.                                                  Case No.: 5:23-cv-00305

MARTIN J. O'MALLEY,
**Commissioner of the**
**Social Security Administration,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Frank W. Volk, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in his favor. (ECF Nos. 6, 7).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the

pleadings be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

## I.    <u>Procedural History</u>

On November 23, 2020, Kevin F. ("Claimant") protectively filed for DIB and SSI, alleging a disability onset date of November 12, 2020 due to "permanent back damage, permanent damage to both legs, neck damage, head damage, PTSD, temporal mandibular joint disfunction, high blood pressure, arthritis, migraine headaches, insomnia, anxiety, and depression." (Tr. at 253-72, 293). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 29). Claimant then filed a request for an administrative hearing, which was held on November 15, 2022 before the Honorable M. Drew Crislip, Administrative Law Judge ("the ALJ"). (Tr. at 51-76). By written decision dated December 27, 2022, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 26-50). The ALJ's decision became the final decision of the Commissioner on March 1, 2023 when the Appeals Council denied Claimant's request for review. (Tr. at 1-7).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed a Transcript of the Administrative Proceedings. (ECF No. 5). Claimant filed a Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 6, 7). The time period for Claimant to file a reply to the Commissioner's brief expired. Therefore, the matter is ripe for resolution.

## II.    <u>Claimant's Background</u>

Claimant was 51 years old on his alleged disability onset date and 53 years old on the date of the ALJ's decision. (Tr. at 42). He communicates in English; completed two

years of college and EMT training; graduated from tractor trailer school; was certified to teach surface mining classes; and previously worked as an accounts coordinator for an investigation company. (Tr. at 292, 294, 295).

## III.    Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the

limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or

applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through December 31, 2025. (Tr. at 31, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since November 12, 2020, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: cervical and lumbar degenerative disc disease (DDD), obesity, depressive disorder, anxiety disorder, and post-traumatic stress disorder

(PTSD). (Tr. at 32, Finding No. 3). The ALJ also considered Claimant's headaches, hypertension, hyperlipidemia, temporomandibular joint (TMJ) disorder, and tinnitus, but he determined that they were non-severe impairments. (Tr. at 32-33).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 33-36, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, and to sit for up to six hours and stand and/or walk for up to six hours in an eight-hour workday. He would need to alternate from sitting to standing or walking for two-three minutes after each hour, and from standing or walking to sitting for two-three minutes after every half-hour, always retaining ability to remain on task during all position changes, some of which would be covered by typical work breaks or time off task there beyond. He can occasionally operate foot controls with the left lower extremity and has no limitations with operating foot controls with the right lower extremity. The claimant can occasionally reach overhead bilaterally. He can frequently reach in all other directions and handle, finger, and feel bilaterally. The claimant can occasionally climb ramps and stairs, and stoop. He can never climb ladders, ropes, and scaffolds, balance (navigate uneven or slippery terrain), kneel, crouch, or crawl. The claimant can never work at unprotected heights or in proximity to moving mechanical parts of dangerous machinery. Occasionally, he can operate a motorized vehicle, or be exposed to weather, humidity and wetness, or pulmonary irritants, but he can never be exposed to extreme cold, extreme heat, vibration, noise above a moderate level, or flashing, glaring, or strobing lights, although typical office fluorescent lights are endurable without restriction. The claimant can never perform work that involves complex tasks, a high production rate, or fast pace. He is able to interact with supervisors occasionally, but his interaction with them during an orientation period of up to 30 days can be frequent. He is able to interact with coworkers occasionally but cannot perform work as part of a team. He is able to occasionally interact with the public but cannot perform customer service. In addition to normal breaks, he would be off task five percent of the time in an eight-hour workday.

(Tr. at 36-42, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform his past

relevant work. (Tr. at 42, Finding No. 6). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with his RFC to determine his ability to engage in other substantial gainful activity. (Tr. at 42-43, Findings 7 through 10). The ALJ considered that (1) Claimant was born in 1969 and was defined as an individual closely approaching advanced age on the alleged disability onset date; (2) Claimant had at least a high school education; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of his transferable job skills. (Tr. at 42, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a router, order caller, or office helper. (Tr. at 42-43, Finding No. 10). Thus, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 43, Finding No. 11).

## IV.    **Claimant's Challenges to the Commissioner's Decision**

Claimant argues that the ALJ (1) failed to properly evaluate his obesity, (2) erred by having the medical expert testify before Claimant at the administrative hearing, and (3) made multiple errors in the subjective symptom evaluation. (ECF No. 6 at 7-15). In response, the Commissioner contends that the ALJ applied the correct law concerning Claimant's obesity, and Claimant does not point to any specific evidence that the ALJ failed to consider or that demonstrated additional functional limitations related to obesity. (ECF No. 7 at 8-10). The Commissioner further notes that the ALJ did not violate any judicially enforceable right by having the medical expert testify before Claimant; also, the medical expert reviewed the record in advance of the hearing, so she did not need to

hear Claimant's testimony before rendering an opinion. (*Id.* at 11-12). Finally, the Commissioner asserts that the ALJ appropriately considered Claimant's subjective statements about his impairments. (*Id.* at 13-17).

## V.    Relevant Evidence

The undersigned reviewed all of the evidence before the Court. The following information is most pertinent to Claimant's challenges.

### A. *Treatment Records*

On January 13, 2021, Claimant presented to psychiatrist Brandon Workman, D.O., for medication refills. (Tr. at 415). Despite the fact that he was terminated from his job after getting into an argument with his boss, he was doing pretty well. (Tr. at 418). Claimant stated that he was doing things around the house and was enjoying the time off, but intended to try to get back to work. (*Id.*). His energy level, focus, and concentration were stable; anxiety was improved; and he denied any issues with fatigue, irritability, or frustration. (*Id.*). Dr. Workman diagnosed Claimant with mild recurrent major depressive disorder and posttraumatic stress disorder for which he renewed Claimant's medications. (*Id.*).

Claimant saw his primary care physician, Jaime Blankenship, D.O., on January 20, 2021. Claimant was six feet and 2 inches tall and weighed 282 pounds. (Tr. at 444). He suffered from migraines "maybe" once per week, but they were less severe now that he was not working outside of the home. (Tr. at 447). Medication kept his headaches to a minimum. (*Id.*). Claimant complained of significant left knee and low back pain that were worse recently because he was trying to do some projects around the house. (*Id.*). On examination, he was obese and had limited range of motion in his left knee and cervical spine, as well as pain and tenderness in those areas, but his examination findings were

otherwise unremarkable. (*Id*.). Claimant ambulated normally with normal psychiatric findings. (*Id*.). Dr. Blankenship diagnosed Claimant with anemia, pain in the left knee, headache, low back pain, and neck pain. (Tr. at 448). She administered a steroid injection in Claimant's left knee and renewed his prescriptions. (*Id*.).

On December 1, 2021, an MRI of Claimant's cervical spine showed multilevel degenerative changes that were greatest at C5-6, including moderate spinal canal encroachment, severe left neural foraminal encroachment, and mild right neural foraminal encroachment. (Tr. at 855). There was also neural encroachment at C6-7 that was severe on the right and moderate on the left. (*Id*.). Claimant followed up with neurosurgeon Calvin Whaley, D.O., on April 18, 2022 regarding pain, numbness, and tingling in his extremities and gait instability. (Tr. at 850, 852). Dr. Whaley noted that Claimant had a history of job related traumas, including being run over by an ATV at work in 2011, which severely injured his left leg and required five subsequent operations. (Tr. at 852). Claimant complained of left leg weakness and sensory changes since that injury. (*Id*.). He was also hit on the head in 2016, which worsened his neck pain at the time. (*Id*.). Dr. Whaley diagnosed Claimant with myelopathy due to spondylosis. (Tr. at 853). He recommended an anterior cervical discectomy and fusion at C5-6 and C6-7, which he performed on May 17, 2022. (Tr. at 853, 856).

A few months after surgery, on August 24, 2022, Dr. Whaley noted that Claimant was doing well and denied radiating arm pain and neck pain. (Tr. at 889). Claimant expressed that his low back pain was radiating into his lower extremities. (*Id*.). His legs occasionally gave out, but he did not have typical issues in terms of weakness. (*Id*.). Claimant stated that physical therapy and injections did not help him. (*Id*.). His gait, station, and range of motion in his head, neck, and extremities were normal; he could

perform tandem gait with no difficulty; his strength was 5/5 without any evidence of atrophy or instability; sensation was intact; and reflexes were normal except blunted at the calcaneal reflex bilaterally. (Tr. at 890-91). Dr. Whaley diagnosed Claimant with lumbar radiculopathy secondary to a large disc herniation identified in October 2021 with severe spinal stenosis at that level. (Tr. at 891). He ordered a CT scan to evaluate surgical options. (*Id.*). The lumbar CT taken on October 6, 2022 showed mild to moderate degenerative changes. (Tr. at 939). Dr. Whaley performed a left L4-5 microdiscectomy on November 8, 2022. (Tr. at 940).

### B. Evaluations, Opinions, and Prior Administrative Findings

On January 15, 2020, Bruce A. Guberman, M.D., performed an internal medicine examination of Claimant. Claimant reported that he was assaulted on August 12, 2016 while stepping out of his vehicle when he was traveling for work. (Tr. at 387). He was struck in the head twice and kicked to the ground. (*Id.*). Claimant sustained injuries in his head, neck, and, to a lesser extent, his right elbow and left thumb. (Tr. at 393). He sought medical treatment, but there were no fractures, and he was treated conservatively. (*Id.*). The assault occurred on a Friday, and Claimant returned to work three days later on Monday. (Tr. at 389). He thereafter missed an occasional day of work, primarily because of headaches, but he continued to work full time. (*Id.*). Claimant's thumb and elbow symptoms resolved. (Tr. at 393). The neck pain persisted, and he suffered from increasingly severe headaches. (*Id.*). Dr. Guberman noted that Claimant also previously injured his left leg and lower back on April 9, 2011 when he was struck and knocked down by an ATV. (Tr. at 389).

On March 31, 2021, Jimmy R. Adkins, II, P.A., performed an internal medicine examination of Claimant. Claimant weighed 277 pounds. (Tr. at 506). He ambulated with

a limping gate that was not unsteady, lurching, or unpredictable, and he did not require the use of an assistive device. (*Id.*). Claimant appeared stable at station and comfortable in the sitting position. (*Id.*). He expressed some tenderness to palpation and during range of motion testing. (Tr. at 507). Claimant's straight leg raising tests, muscle strength, sensory modalities, and deep tendon reflexes were normal, except his left lower extremity strength was 4/5 with give-away weakness and he was unable to distinguish between light touch and vibration in his left second, third, fourth, and fifth toes. (Tr. at 508). Claimant could stand on one leg and walk on his heels and toes without difficulty; perform one-half squat with pain complaints; and perform the tandem gait test while limping. (*Id.*).

On September 24, 2021, Katherine Marshall, M.S., performed an adult mental status examination. Claimant was cooperative, exhibited good eye contact, and was oriented in all spheres. (Tr. at 556). His speech was somewhat loquacious, mood was expansive, affect was restricted, thought processes were circumstantial, and his judgment, concentration, and social functioning were mildly impaired. (*Id.*). There were no issues regarding his thought content, perception, insight, psychomotor behavior, memory, persistence, or pace. (*Id.*). Ms. Marshall diagnosed Claimant with posttraumatic stress disorder, major depressive disorder, and generalized anxiety disorder. (Tr. at 557).

On April 14, 2021, Cindy Osborne, D.O., assessed that Claimant could perform light exertional work that included occasional postural activities, except for frequent climbing of ramps/stairs and balancing, and no concentrated exposure to extreme cold, vibration, or hazards. (Tr. at 88-90, 106-08). Upon reconsideration, on August 23, 2021, Uma Reddy, M.D., assessed that Claimant could perform light work with occasional postural activities; no concentrated exposure to extreme cold, noise, vibration, or fumes; and not even moderate exposure to extreme heat or hazards. (Tr. at 119, 130).

On October 26, 2021, Jeff Boggess, Ph.D., assessed that Claimant had no limitation understanding, remembering, or applying information; moderate limitation interacting with others; and mild limitations maintaining concentration, persistence, or pace and adapting or managing himself. (Tr. at 117, 128). Dr. Boggess concluded that Claimant could have limited contact with the general public in a work like setting. (Tr. at 120, 131).

During Claimant's administrative hearing on November 15, 2022, Mary Eileen Buban, Psy.D, testified that Claimant was diagnosed with major depressive disorder that was mild in severity, generalized anxiety disorder, and adjustment disorder with mixed emotions and conduct. (Tr. at 56). Dr. Buban summarized the evidence and opined that Claimant had mild limitations in understanding, remembering, and applying information and adapting or managing himself; moderate limitations in interacting with others, as he seemed to become irritated and have a low frustration tolerance; and moderate limitations in maintaining concentration, persistence, or pace, primarily due to pain complaints. (Tr. at 57). Dr. Buban concluded that Claimant's RFC was limited to no customer service or tandem teamwork, occasional interaction with others, a job that could be performed independently once Claimant learned it, and no fast-paced production or quota work. (*Id.*).

Kweli, Amusa, M.D., also testified during Claimant's administrative hearing. She stated that Claimant suffered from chronic pain in his cervical and lumbar spine due to degenerative disc disease that was documented on imaging. (Tr. at 58-59). Claimant improved after his cervical spine surgery and had a lumbar microdiscectomy the week before his hearing. (Tr. at 59). He only had mild problems with headaches with the addition of Elavil. (*Id.*). Claimant also had some joint problems in his left shoulder and knee and was moderately obese. (Tr. at 60). Based on the evidence, Dr. Amusa opined

that Claimant could perform light exertional work, as limited to no more than four hours of standing/walking in a workday; sitting for no more than six hours in a workday; occasional postural activities, except for no climbing of ladders, ropes, or scaffolds; occasional operation of foot control with his left lower extremity; no concentrated exposure to extreme cold or vibrations; and no exposure to unprotected heights or hazards. (Tr. at 61). Dr. Amusa testified that the ability to change positions in a job, such as standing/walking for a few minutes after every hour of sitting and, conversely, sitting for a few minutes after every 30 minutes of standing/walking would possibly expand the standing/walking limitation to six hours. (*Id*.). Dr. Amusa also stated that it might be reasonable to limit Claimant's RFC to occasional reaching with the left upper extremity. (Tr. at 62). Dr. Amusa explained that Claimant reported severe pain prior to his surgeries, so he was possibly off task for 10 to 15 percent of the workday over the past 12 months. (Tr. at 62-63). She further testified that chronic pain could vary from day-to-day, so his ability to perform work functions could possibly be more restricted some days than others. (Tr. at 63).

### C. Claimant's Statements

Claimant testified during his administrative hearing on November 15, 2022 that prior to surgery his back issues affected his ability to stand, sit, walk, and balance. (Tr. at 64). He fell a lot due to his neck and back injuries and damage to his nervous system. (*Id*.). Claimant stated that medication made his symptoms tolerable. (*Id*.). He had a cane, but he was "bad" about using it. (Tr. at 67). Claimant stated that he spent half of the day in a reclined position. (Tr. at 68). He had to take breaks and sit down while cooking, which made it take a lot longer. (*Id*.). He had trouble with reaching and dropped things because his upper extremities would "fall asleep" and tingle from nerve damage. (*Id*.). In terms of

mental impairments, Claimant testified that he had trouble being around others and even had to leave his granddaughter's birthday party because he felt like he was "smothering." (Tr. at 66). He had trouble focusing and sleeping since he was attacked in 2016. (*Id.*).

## VI.    <u>Standard of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the record and determine whether it is adequate to support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. When conducting this review, the Court does not re-weigh evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001) (citing *Hays*, 907 F.2d at 1456)). Moreover, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) ... requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted). Thus, the relevant question for the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is

supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 589).

## VII. <u>Discussion</u>

Claimant challenges the ALJ's analysis of his obesity, procedure with regard to taking medical expert testimony, and evaluation of his subjective symptoms.

### A. Obesity

Claimant first argues that the ALJ did not analyze the cumulative impact of his obesity and other impairments on his functional abilities. (ECF No. 6 at 9). He specifically alleges that the ALJ did not evaluate how his obesity affected his degenerative disc disease and mental impairments. (*Id.*). Claimant contends that SSR 19-2p does not support the ALJ's finding that he can perform light work given his musculoskeletal problems combined with his obesity, which would impact his ability to sit, stand, and walk. (*Id.*).

SSR 19-2p explains that "the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately." SSR 19-2P, 2019 WL 2374244, at *2. According to the Ruling, "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment(s)," and the SSA will "evaluate each case based on the information in the case record." *Id*. In evaluating a claimant's RFC, the ALJ must explain whether obesity causes any limitations. *Id*. at *4. Obesity can affect a person's exertional abilities (sitting, standing, walking, lifting, carrying, pushing, and pulling) and/or nonexertional functions (climbing, balancing, stooping, kneeling, crouching, and crawling). *Id*. Obesity also increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities; may also affect a person's ability to manipulate objects, if there is adipose (fatty) tissue in the hands and fingers; or the ability

15

to tolerate extreme heat, humidity, or hazards. *Id.* The ALJ assesses a claimant's RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment. *Id.* People with medically determinable obesity may have limitations in the ability to sustain a function over time. *Id.* In addition, in cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity; this may be particularly true in cases involving obesity and sleep apnea. *Id.*

In this case, the ALJ concluded at step two of the sequential evaluation that Claimant's obesity was a severe impairment. (Tr. at 32). The ALJ evaluated Claimant's obesity at step three of the sequential evaluation, specifically noting that he considered whether Claimant's obesity caused or contributed to co-existing impairments as required by SSR 19-2p. (Tr. at 34). For example, the ALJ remarked that obesity can impact pulmonary, musculoskeletal, endocrine, or cardiac functioning. (*Id.*). In the RFC analysis, the ALJ discussed the fact that Claimant is obese; recounted the evidence concerning Claimant's BMI; cited SSR 19-2p; and explained that an obese individual with arthritis in a weight-bearing joint, for example, may experience more pain and limitations than are typically expected from arthritis alone, and obesity may limit a person's ability to sustain work activity on a regular and continuing 40 hour work week. (Tr. at 39). The ALJ again cited that obesity can impact pulmonary, musculoskeletal, endocrine, or cardiac functioning. (*Id.*).

The ALJ's RFC analysis of Claimant's obesity is admittedly brief and formulaic. However, it evidences that the ALJ applied the correct legal standard and considered the cumulative effects of obesity and Claimant's other impairments. The Fourth Circuit has not definitively addressed the level of detail required to comply with SSR 19-2p although,

16

in the past, it has disregarded a purely speculative challenge that the ALJ did not sufficiently address how the claimant's obesity may have somehow aggravated his neck condition. *Russell v. Chater*, No. 94–2371, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished table decision).

District courts within the Fourth Circuit have remanded cases in which the ALJ provided no indication in the RFC analysis that they considered SSR 19-2p or the functional effects of the claimants' obesity in combination with their other impairments. *Daisy F. v. Kijakazi*, No. 2:21-CV-563, 2022 WL 18936086, at *7 (E.D. Va. Dec. 15, 2022), *report and recommendation adopted sub nom.; Carl F. v. Kijakazi*, 2023 WL 2352827 (E.D. Va. Mar. 3, 2023) (collecting cases); *Cassandra W. v. Kijakazi*, No. CV CBD-20-153, 2022 WL 279828, at *6-7 (D. Md. Jan. 31, 2022). By contrast, district courts have affirmed decisions similar to the one at issue in this case in which the ALJ did not articulate a detailed discussion but showed that he or she considered the applicable law and cumulative effects of the claimant's obesity. *Lilley v. Saul*, No. 4:19-CV-93-RJ, 2020 WL 3884429, at *7 (E.D.N.C. July 9, 2020) ("The ALJ acknowledged Claimant's obesity and indicated he considered it in formulating the RFC, and to the extent his analysis is lacking, the error is harmless where the record fails to demonstrate how obesity further limited Claimant's abilities beyond the RFC determined by the ALJ.") (citations omitted); *Hamed v. Saul*, No. 1:19CV0238 (TSE/JFA), 2019 WL 8062701, at *10 (E.D. Va. Oct. 18, 2019), *report and recommendation adopted,* 432 F. Supp. 3d 610 (E.D. Va. 2020) ("For example, in her discussion concerning plaintiff's obesity, the ALJ expressly notes that she 'considered the potential effects of [plaintiff's] obesity with the other impairments in formulating the residual functional capacity.' Accordingly, the ALJ demonstrated her consideration of the cumulative impact of plaintiff's impairments in determining his

17

residual functional capacity.") (citation omitted).

Here, the ALJ not only expressed in the RFC discussion that he considered the impact of Claimant's obesity on his pain, other symptoms, and limitations, but the ALJ was also persuaded by Dr. Amusa's testimony. (Tr. at 39, 41-42). Dr. Amusa's opinions were based on her review of the record, including Claimant's moderate obesity, as she thoroughly testified. (Tr. at 58-63). Claimant argues that his obesity potentially exacerbated his neck and back pain, numbness, and tingling throughout his lower extremities. (ECF No. 6 at 8). He indicates that the ALJ should have specifically discussed his obesity in combination with his degenerative disc disease and mental impairments because it possibly worsened his pain, restricted his mobility, or worsened his functional limitations, such as his ability to sit, stand, and walk. (*Id*. at 8, 9).

These generalized arguments are insufficient to warrant remand in this case. Claimant does not point to any critical evidence that the ALJ failed to consider. The ALJ very thoroughly discussed Claimant's ability to sit, stand, and walk in addition to other functions and concluded that Claimant could perform a very limited range of light work. Although he did not provide an exhaustive analysis of Claimant's obesity, he showed that the RFC finding accounted for the total limiting effects of Claimant's obesity and other impairments. *See, e.g., Conner v. Kijakazi*, No. 3:21-CV-00022, 2022 WL 873682, at *10 (S.D.W. Va. Mar. 7, 2022), *report and recommendation adopted,* No. CV 3:21-0022, 2022 WL 866271 (S.D.W. Va. Mar. 22, 2022) ("In short, Claimant makes no more than a generalized argument regarding her obesity and does not point to any specific evidence that the ALJ failed to consider. This falls far short of the standard for remand.").

For those reasons, the Court **FINDS** that the ALJ's evaluation of Claimant's obesity is supported by substantial evidence.

### B. *HALLEX I-2-6-70(b)*

Claimant next argues that the ALJ erred by having Dr. Amusa testify at the administrative hearing without the benefit of Claimant's testimony, which Claimant contends violated SSA policy expressed in the Hearings, Appeals and Litigation Law manual (HALLEX) I-2-6-70(B). (ECF No. 6 at 10-11). Per HALLEX I-2-6-70(B), if an ALJ determines that the testimony of a medical expert ("ME") is needed at an administrative hearing and the ME "was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record." HALLEX I-2-6-70(B), *available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-70.html. In the instant case, Dr. Amusa testified before Claimant. However, she clearly stated on the record that she reviewed the evidence in preparation for his testimony, which included records of Claimant's current medications, sources, and types of treatments, as well as subjective statements he made to providers. Dr. Amusa had the relevant knowledge to express an opinion during the hearing and did not require Claimant's testimony to provide her with that information.

In addition, as Claimant recognizes, HALLEX is an internal SSA policy manual. (ECF No. 6 at 10). This Court and other district courts have ruled that HALLEX does not create judicially enforceable rights. *See, e.g., Leshia H. v. Kijakazi*, No. 3:22-CV-00569, 2023 WL 3751106, at *10–11 (S.D.W. Va. May 15, 2023), *report and recommendation adopted,* 2023 WL 3746502 (S.D.W. Va. May 31, 2023). Therefore, the Court **FINDS** that this is not a viable basis for remand.

### C. *Subjective Symptoms*

In his final challenge, Claimant argues that the ALJ's multiple errors in the

subjective symptom analysis compel reversal of the decision. (ECF No. 6 at 11). Under the applicable Social Security rulings and regulations, an ALJ is obliged to use a two-step process when evaluating the credibility of a claimant's subjective statements regarding the effects of his or her symptoms. 20 C.F.R. §§ 404.1529, 416.929 (effective March 27, 2017). First, the ALJ must consider whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain. *Id.* §§ 404.1529(a), 416.929(a). In other words, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (effective March 16, 2016). Instead, evidence of objective "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques" must be present in the record and must demonstrate "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b).

Second, after establishing that the claimant's conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* §§ 404.1529(a), 416.929(a). If the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence, the ALJ must consider "other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms," including a claimant's own statements. SSR 16-3p, 2016 WL 1119029, at *5-*6. In evaluating a claimant's statements regarding his or her symptoms, the ALJ must consider

"all of the relevant evidence," including: the claimant's history; objective medical findings obtained from medically acceptable clinical and laboratory diagnostic techniques; statements from the claimant, treating sources, and non-treating sources; and any other evidence relevant to the claimant's symptoms, such as, evidence of the claimant's daily activities, specific descriptions of symptoms (location, duration, frequency and intensity), precipitating and aggravating factors, medication or medical treatment and resulting side effects received to alleviate symptoms, and other factors relating to functional limitations and restrictions due to the claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); *see also Craig*, 76 F.3d at 595; SSR 16-3p, 2016 WL 1119029, at *4-*7.

SSR 16-3p provides further instruction on what type of evidence should be considered when the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *6. The ruling presents an extensive list of evidence that may prove probative and notes that valuable evidence to consider may include (1) a longitudinal record of any treatment and its success or failure, including any side effects of medication and (2) indications of other impairments, such as potential mental impairments, that could account for an individual's allegations. *Id.*

In *Hines v. Barnhart*, the Fourth Circuit stated that:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing *Craig*, 76 F.3d at 595). The ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical

21

evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ. SSR 16-3p, 2016 WL 1119029, at *5.

Ultimately, "it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for [an ALJ] simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." *Id.* at *9. SSR 16-3p instructs that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person;" rather, the core of an ALJ's inquiry is "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* at *10.

When considering whether an ALJ's evaluation of a claimant's reported symptoms is supported by substantial evidence, the Court does not replace its own assessment for that of the ALJ; rather, the Court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, reach independent determinations as to the weight to be afforded to a claimant's report of symptoms, or substitute its own judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant,

the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

In this case, the ALJ performed the two-step analysis. He considered Claimant's testimony regarding neck and back pain and mental issues after he was attacked in 2016. (Tr. at 37). The ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (*Id.*). However, the ALJ found that Claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely congruent with the medical evidence and other evidence in the record. (Tr. at 37-38). The ALJ noted that Claimant was diagnosed with cervical strain superimposed on preexisting degenerative changes following the 2016 assault. (Tr. at 38). He eventually underwent a cervical spine surgery in May 2022, and subsequently denied neck pain and radiating arm pain in August 2022. (*Id.*). The ALJ further noted that Claimant complained of lower back and radiating leg pain and underwent a microdiscectomy at L4-5 in November 2022. (Tr. at 38-39). The ALJ considered Claimant's obesity, mental impairments, the opinion evidence, and prior administrative findings within the subjective symptom analysis. (Tr. at 39-42).

Claimant indicates that the ALJ violated SSR 16-3p by stating that his "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely congruent with the medical evidence and other evidence in the record." (ECF No. 6 at 12). Claimant states that SSR 16-3p does not mandate that a claimant's allegations be completely consistent with the record. (*Id.*). The language that the ALJ used reflects boilerplate text that is used in nearly every decision. Sometimes, the ALJ uses the term "consistent" instead of "congruent," but the terms are synonymous. The ALJ evaluated the record and determined the extent to which Claimant's allegations were consistent with

23

the various pieces of evidence, precisely as SSR 16-3p dictates. Subjective symptoms need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence, of the underlying impairment.

Claimant also argues that the ALJ inappropriately considered the fact that he applied for and received unemployment benefits without evaluating whether his conditions worsened thereafter or whether he was only capable of performing sedentary work. (ECF No. 6 at 13). He notes that, pursuant to SSA's own policy, claimants should not have to choose between applying for unemployment and social security benefits. (*Id.*). At step one of the sequential evaluation, the ALJ mentioned in a footnote that Claimant collected unemployment benefits after his alleged onset date. (Tr. at 32 n.3). The ALJ remarked that an individual must typically verify his or her readiness to engage in work, which seemed somewhat inconsistent with simultaneously declaring that he or she is disabled from full-time employment. (*Id.*). However, that portion of the decision only concerned the step one determination of whether Claimant was engaging in substantial gainful activity. (*Id.*). There is no indication that it had any bearing on the subjective symptom analysis. Further, the ALJ explained that his comments should not be interpreted as any criticism of Claimant for having received lawfully-permitted benefits, but only as a mere observation. (*Id.*).

Claimant identifies that the ALJ also did not reconcile the fact that Claimant underwent neck and back surgeries with his finding that Claimant's pain complaints were not fully supported. (ECF No. 6 at 14). Reviewing the decision, the ALJ analyzed in detail Claimant's pain complaints and treatment preceding his surgeries, the surgeries themselves, and the evidence of Claimant's functioning, subjective symptoms, and the objective findings after his surgeries. (Tr. at 38-39). The ALJ ultimately determined that

Claimant could perform a reduced range of light exertional work due to his cervical and lumbar spine impairments. (Tr. at 39). There was no specific language that the ALJ was required to use to "reconcile" Claimant's complaints of pain with the fact that he had surgery. The ALJ considered and weighed all of this evidence. Claimant does not identify any critical, conflicting evidence that the ALJ overlooked.

Finally, Claimant argues that the ALJ relied upon the daily activities that he could perform without considering the limitations that he had performing those activities. (ECF No. 6 at 14-15). An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which he can perform them. *Oakes v. Kijakazi*, 70 F.4th 207, 216 (4th Cir. 2023) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). In *Arakas*, the Fourth Circuit cautioned that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Arakas v. Comm'r, Soc. Sec. Admin.*, No. 19-1540, 2020 WL 7331494, at *9 (4th Cir. Dec. 14, 2020) (citation and markings omitted). For instance, an ALJ cannot selectively cite evidence concerning the tasks that a claimant can perform while improperly disregarding qualifying or contrary evidence regarding the claimant's ability to perform those tasks. *Id.* at *11.

In the instant decision, the ALJ discussed that Claimant's lumbar spine surgery was recent, so there were no follow-up treatment notes in the record. (Tr. at 39). However, the ALJ remarked that, even before his surgery, Claimant could perform a number of activities of daily living, including household chores such as laundry, dishes, sweeping, yard work, and cooking, although Claimant reported only doing those activities in spurts. (*Id.*). Regarding Claimant's mental impairments, the ALJ noted that Claimant was able

25

to perform a variety of activities, including maintaining his personal hygiene, managing his finances, grocery shopping, driving a motor vehicle, watching television, doing chores, preparing light meals, and keeping scheduled appointments. (Tr. at 40).

The ALJ did not misrepresent or cherry-pick the facts in order to present a false picture of Claimant's abilities. The decision as a whole clearly indicates that the ALJ considered the extent to which Claimant was limited in performing his daily activities and provides a logical bridge to the ALJ's conclusions. The ALJ stated that Claimant reported performing daily activities in "spurts." Also, earlier in the decision, the ALJ specifically noted alleged limitations that Claimant had in performing daily activities, such as needing reminders to take his medication and groom himself. (Tr. at 35). Although the ALJ did not reiterate it in the RFC analysis, that restriction was clearly considered and articulated in the decision. *Lora H. v. Kijakazi*, No. 2:22-CV-00211, 2022 WL 18717795, at *13 (S.D.W. Va. Nov. 2, 2022), *report and recommendation adopted sub nom.; Hogan v. Kijakazi,* 2023 WL 2025239 (S.D.W. Va. Feb. 15, 2023).

To any extent that the ALJ did not specifically articulate every one of Claimant's alleged limitations in performing daily activities, there is no rigid requirement that the ALJ mention every piece of evidence or qualifying statements. *Footman v. Kijakazi*, No. 21-1116, 2023 WL 1794156, at *2 (4th Cir. Feb. 7, 2023). The issue that necessitated remand in *Arakas* and similar decisions was that the ALJ overstated and misrepresented claimant's daily activities based on select facts in order to deny disability, and an accurate view of the record as a whole did not support it. *Prudich v. Saul,* No. CV 1:20-00019, 2021 WL 933864, at *6 (S.D.W. Va. Mar. 11, 2021); *Ball v. Kijakazi,* No. 2:21-CV-00027, 2022 WL 883036, at *11 (S.D.W. Va. Mar. 3, 2022), *report and recommendation adopted,* 2022 WL 880004 (S.D.W. Va. Mar. 23, 2022). The "cases make clear that it is

26

insufficient merely to point to minimal daily activities as proof that a claimant is not disabled" because, as the Fourth Circuit explained in *Arakas*, "claimants should not forfeit Social Security benefits for trying to 'participate in the everyday activities of life.'" *Prudich*, 2021 WL 933864, at *7 (quoting *Arakas*, 983 F.3d at 101).

In this matter, the ALJ very thoroughly discussed Claimant's function reports, testimony, and a plethora of other evidence bearing on the subjective symptom analysis. He is simply asking the Court to reweigh evidence and reach different conclusions than the ALJ. The ALJ considered the relevant evidence and ultimately determined that the activities that Claimant could perform, even with the limitations that he alleged, supported no greater restrictions. The ALJ did not adjudge Claimant non-disabled solely based on his ability to perform some activities. It was one of many factors that the ALJ considered in evaluating Claimant's subjective symptoms and RFC. *Cf. Langston v. Comm'r of Soc. Sec. Admin.*, No. 22-1257, 2023 WL 1519521, at *4 (4th Cir. Feb. 3, 2023) (finding error where the ALJ discredited the claimant's assertions of disabling pain based largely on her ability to perform modest daily activities).

For those reasons, the undersigned **FINDS** that the ALJ's subjective symptom analysis is supported by substantial evidence.

## VIII.  <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 6); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 7); **AFFIRM** the decision of the Commissioner; **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**: January 26, 2024

Cheryl A. Eifert
United States Magistrate Judge

28